IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **RYAN BARRY** *Plaintiff*, v. **ALSCO INC.**, *Defendant*. | Civil Action No: 8:24-cv-03590-PX |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Alsco Inc., by and through its undersigned counsel, Suzzanne W. Decker and Tonya R. Foley, and Miles & Stockbridge P.C., and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits the following Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint and states as follows:

## INTRODUCTION

Plaintiff Ryan Barry ("Mr. Barry" or "Plaintiff"), a former manager for Defendant Alsco Inc. ("Alsco" or "Defendant"), has filed this lawsuit because he disagrees with his termination from employment for violating company policy, including the company's anti-sexual harassment and standard of conduct policies. All three causes of action (Defamation (Count I); Intentional Infliction of Emotional Distress (Count II); and Wrongful/Abusive Termination (Count III)), arise out of his termination and should be dismissed because Mr. Barry has failed to allege sufficient facts to state a claim of relief. Count I should be dismissed because Mr. Barry failed to provide facts sufficient to support his claim that Alsco published a defamatory statement and that the statement(s) were false. Count II should be dismissed because Mr. Barry failed to provide facts showing that Alsco's actions were extreme and outrageous. Finally, Count III should be dismissed because Mr. Barry fails to plead any public policy that his termination violated. For these reasons, as set forth in further detail below, this lawsuit should be dismissed, with prejudice.

## RELEVANT BACKGROUND[1]

Mr. Barry began working for Alsco, a textile rental services business, as a General Manager in 2015. Compl. At ¶12. On January 26, 2024, Mr. Barry attended a holiday party (the "Party") with his wife at The Hamilton restaurant in Washington, D.C. *Id.* at ¶¶20–22.

---

[1] All facts are taken from Mr. Barry's Complaint.

1

On the morning of February 2, 2024, Giovanni Notobartolo[2] ("Mr. Notobartolo"), Alsco's Regional Human Resources Business Partner, and Maggan Hutter ("Ms. Hutter"), Alsco's Corporate Human Resources Field Manager, were at the plant when Mr. Barry arrived. *Id.* at ¶¶25–26. Mr. Notobartolo and Ms. Hutter informed Mr. Barry that they were investigating a complaint but did not provide Mr. Barry with any additional information at that time. *Id.* at ¶¶27–28. Approximately two hours later, Mr. Notobartolo and Ms. Hutter interviewed Mr. Barry as part of their investigation. *Id.* at ¶29. Mr. Notobartolo and Ms. Hutter asked Mr. Barry about the Party, including whether he or other attendees consumed alcohol, whether Mr. Barry had been impaired at the Party, "and whether he recalled hugging someone, caressing their head, and/or telling them that he loved them." *Id.* at ¶33. Mr. Barry denied being impaired at the Party and denied hugging anyone in the manner described. *Id.* at ¶¶24, 34. Mr. Notobartolo and Ms. Hutter reminded Mr. Barry that their investigation was confidential and instructed Mr. Barry not to speak to any employee about the matter or make any effort to conduct his own investigation. *Id.* at ¶35.

Later that morning, Mr. Notobartolo and Ms. Hutter went to Mr. Barry's office and informed him that he was being put "out of service"[3] until February 7, 2024, while they conducted the rest of their investigation. *Id.* at ¶38. They told Mr. Barry that Tim Jones ("Mr. Jones"), Alsco's Regional Manager, would contact Mr. Barry once the investigation was complete. *Id.* Mr. Notobartolo escorted Mr. Barry out of the office. *Id.* at ¶41. At some point after February 2, 2024 but before February 5, 2024, employees from other Alsco branches contacted Mr. Barry and his wife regarding Mr. Barry's "out of service" status. *Id.* at ¶47. On February 5, 2024, Mr. Jones called Mr. Barry and asked him to come into the office. *Id.* at ¶51. Mr. Barry also learned on February 5 that Alsco had not interviewed every single person who attended the Party. *Id.* at ¶53.

---

[2] In the Complaint, Mr. Barry spells Mr. Notobartolo's name incorrectly as "Notabartolo."
[3] An "out of service" employee is on leave.

2

When Mr. Barry arrived at the Alsco office on February 6, he observed a police officer inside a marked squad car in the parking lot. *Id.* at 56. Mr. Notobartolo escorted Mr. Barry into a conference room with Mr. Jones. *Id.* at 57. Mr. Jones advised Mr. Barry that Alsco had completed its investigation and was terminating Mr. Barry's employment. *Id.* at ¶57. Mr. Jones provided Mr. Barry with a letter signed by Mr. Jones, dated February 5, 2024, that stated, in part:

> your employment is being terminated for violation of the Alsco Sexual Harassment Policy (see e.g., Section 1.1.3) and standards of conduct (see, e.g. Section 4.15) set forth in the Employee Handbook, as well as violation of SOP 1700 (Discrimination and Harassment Prevention and Complaint Procedures Policy).

*Id.* at ¶58. Mr. Jones declined to provide any additional details regarding the confidential investigation in response to Mr. Barry's request. *Id.* at ¶59. Mr. Barry received a box containing his personal belongings from his office. *Id.* at ¶60. Jennifer Pena ("Ms. Pena"), an Alsco Human Resources Manager, escorted Mr. Barry out of the office and waited with him until his wife arrived to pick him up, as he had driven his company car to the office and turned in the keys to Mr. Jones. *Id.* at ¶¶61–62.

## STANDARD OF REVIEW

A complaint "must contain… a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. Rule 8(a)(2). Although a plaintiff does not have to provide every detail in his complaint, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

3

factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted) (alternation in original).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff must plausibly allege facts that, if proven, would be sufficient to establish each element of the claim." *Harvey v. Cable News Network, Incorporated*, 48 F.4th 257, 268–69 (4th Cir. 2022). Even though the Court must accept as true all factual allegations in a complaint, "a court is not required to accept legal conclusions drawn from the facts." *State Farm Mutual Automobile Insurance Company v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 552 (D. Md. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)). The court must separate facts from legal conclusions, "then determin[e] whether those allegations allow the court to reasonably infer that the plaintiff is entitled to the legal remedy sought." *Id.* (internal quotations omitted).

## ARGUMENT

**I. COUNT I SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR DEFAMATION**

In Count I, Plaintiff alleges that, "on at least February 2, 2024 and February 6, 2024," "Alsco's incorrect, untrue, and unsupported statements and actions conveying to Alsco's employees and other third parties that Mr. Barry engaged in professional misconduct, including inappropriate sexual conduct under the influence of alcohol" were defamatory and resulted in damage to his reputation, emotional distress, and "a diminished ability to secure compensation from new employment at the same level he earned at Alsco." Compl. at ¶¶71, 82, 89. Plaintiff's Complaint is void of any specific factual allegations regarding who made the alleged statements, what was said and to whom these alleged statements were made.

Under Maryland law, a plaintiff asserting a claim for defamation must allege facts that establish four elements: "(1) that the defendant made a defamatory statement to a third person, (2)

4

that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198, 935 A.2d 719 (2007) (citing *Smith v. Danielczyk*, 400 Md. 98, 115, 928 A.2d 795 (2007)). This Court has stated that "although defamation claims are not subject to the heightened pleading requirements of Rule 9(b), they nevertheless must include enough details to make it plausible that the claimant is entitled to relief." *Total Recon Auto Center, LLC v. Allstate Insurance Co.*, 705 F. Supp. 3d 510, 526 (D. Md. 2023) (citing *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 377 (4th Cir. 2012)). Vague assertions are insufficient—a complaint "must allege **specific facts** establishing [the] four elements" of defamation. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (emphasis added).

### A. Plaintiff fails to plead sufficient facts to establish that Alsco made a defamatory statement to any third party.

A plaintiff claiming defamation "must specifically allege **each defamatory statement**." *Doe v. Salisbury University*, 123 F. Supp. 3d 748, 758-59 (D. Md. 2015) (emphasis added). Plaintiff has not identified a single statement made by Alsco to anyone. The company's act of escorting him out of the building is the most specific allegation in this Count. However, the Appellate Court of Maryland has stated that "[w]e do not believe that the mere act of an employer escorting an employee from the building after termination of employment, without more, constitutes a defamatory publication." *Gay v. William Hill Manor, Inc.,* 74 Md. App. 51, 56, 536 A.2d 690 (1988). Simply alleging that he was escorted from the building is insufficient to establish that Alsco published a defamatory statement—Plaintiff must plead the specific statements made by Alsco to a third party that he asserts are defamatory.[4]

---

[4] Plaintiff throws in an allegation that there was a police car in the Alsco parking lot but does not tie this in any way to his termination. He has not alleged that Alsco involved a police officer in its investigation or his termination.

5

Plaintiff claims Alsco "conveyed" to unnamed employees and unidentified third parties that Mr. Barry was guilty of professional misconduct when they escorted him from the building. *Id.* at ¶¶45, 49–50, 66.  This does not meet Plaintiff's burden to plead facts sufficient to allege that Alsco "communicated a statement…to a third person who reasonably recognized the statement as being defamatory." *Shapiro v. Massengill*, 105 Md. App. 743, 772, 661 A.2d 202 (1995) (quoting *Kairys v. Douglas Stereo Inc.*, 83 Md. App. 667, 678, 577 A.2d 386 (1990)).  Plaintiff does not identify who saw him being escorted out of the building, or how they interpreted that action.  This is insufficient to meet the specificity required for a claim of defamation. *See State Farm Mutual Automobile Insurance Company v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568 (D. Md. 2019) (A plaintiff alleging defamation "must provide more than vague and hazy allegations.").

Plaintiff's allegations parallel those in *Gay v. William Hill Manor, Inc.*, 74 Md. App. 51, 536 A.2d 690 (1988), which the court found insufficient to state a claim for defamation. The plaintiff in *Gay* was accused of professional misconduct while working at the defendant nursing home. *Id.* at 53.  Following an investigation, the plaintiff was given a document stating the reasons for her termination, escorted to her locker to gather her personal belongings, then escorted out of the facility to her car. *Id.* at 53–54.  As in *Gay*, Plaintiff has not pled specific statements or actions that would rise to the level of a defamatory publication.  Alsco, like the defendant employer in *Gay,* received a complaint and conducted a confidential investigation.  Following that investigation, Alsco terminated Plaintiff's employment, provided him with a letter outlining the reasons for his termination, declined to reveal the identity of the complainant, and escorted him out of the building. Compl. at ¶¶57–61.

Plaintiff hypothesizes that "[u]pon information and belief, Alsco, through Mr. Notobartolo and Ms. Hutter, informed various Alsco employees of the allegations against Mr. Barry of

6

purported inappropriate sexual conduct under the influence of alcohol at the Party," and that this unsupported assumption combined with his termination "clearly conveyed to the employees and other third parties that Alsco had made a determination that Mr. Barry was guilty of professional misconduct." Compl. at ¶¶37, 45.  However, the Appellate Court of Maryland cautioned that

> [n]ot every statement that casts an unfavorable or unappealing light on the plaintiff, however, even when established to have been interpreted as disparaging, constitutes an actionable claim of defamation. To determine whether the [] court should attribute a defamatory meaning to the statement in question, the court must consider the entire publication and the context in which it was made.

*Shulman v. Rosenberg*, No. 1683, Sept. Term, 2016, 2017 WL 5172642 at *11 (Md. App. Nov. 8, 2017).  Viewed in context, Plaintiff only alleges that Alsco investigated a complaint relating to behavior at the Party and, at the conclusion of the investigation, terminated the Plaintiff for violations of Alsco policies.

While Plaintiff may disagree with the conclusions of that investigation, the investigation itself does not constitute a defamatory statement.  According to The U.S. Equal Employment Opportunity Commission Enforcement Guidance on Harassment in the Workplace[5] ("EEOC Guidance") an employer that receives a complaint alleging conduct that *may* violate Title VII is "on notice" and has a duty to take "reasonable corrective action." *Id.* at Section (IV)(C)(3)(b)(i). The employer needs to "conduct[] a prompt and adequate investigation and tak[e] appropriate action based on the findings of that investigation." *Id.* at Section (IV)(C)(3)(b)(ii).  Depending on the severity of the alleged conduct and any supervisory relationship between the complainant

---

[5] Federal Rule of Evidence 201(b) states that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment." *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 642 (D. Md. 2023) (citing *U.S. v. Garcia,* 855 F.3d 615, 621 (4th Cir. 2017)).  The EEOC Guidance is available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace.

and the alleged harasser, an employer may need to take "intermediate steps" such as "placing the alleged harasser on non-disciplinary leave with pay pending the conclusion of the investigation." *Id.* Employers must consider "the nature and degree of the harasser's authority…in evaluating the adequacy of corrective action." *Id.* at Section (IV)(C)(3)(b)(ii)(b)(ii). Finally, "the employer should inform the complainant and alleged harasser of its determination and any corrective action that it will be taking." *Id.* at Section (IV)(C)(3)(b)(ii)(a). The EEOC Guidance reiterates that "the duty to take corrective action may be triggered by notice of harassing conduct that has not yet risen to the level of a hostile work environment, but may reasonably be expected to lead to a hostile work environment if appropriate corrective action is not taken." *Id.* at Section (IV)(C)(3)(b)(i).

At most, Plaintiff asserts that Alsco took steps consistent with the EEOC Guidance. Compl. at ¶¶27–38. It placed Plaintiff in an "out of service status" during the course of the investigation, and provided Plaintiff with its determination and corrective action on February 6, 2024. *Id.* at ¶¶28, 30, 57–59. In the context of an investigation and without identifying any specific statements made by Alsco, the conduct Plaintiff set out in the Complaint is insufficient to show that Alsco published a defamatory statement. *See Doe v. Salisbury University*, 123 F. Supp. 3d 748, 758-59 (D. Md. 2015) (finding the claim for defamation fails where "Plaintiffs are left alleging simply that, upon information and belief, [defendant] made defamatory statements to unnamed and perhaps unknown third parties."). Therefore, Plaintiff has failed to plead sufficient facts to establish that Alsco made a defamatory statement to a third party.

  **B.**  **Plaintiff has failed to plead sufficient facts to establish that any Alsco statements were false.**

On the second element of a defamation claim, the plaintiff must provide "an adequate basis for contesting the veracity" of any allegedly defamatory statements. *State Farm Mutual Automobile Insurance Company*, 381 F. Supp. 3d at 568. "A statement is false if it was 'not

8

substantially correct.'" *Id.* at 566 (quoting *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140 (2012)). Plaintiff bears the burden of establishing falsity. *Piscatelli*, 424 Md. at 306. While Plaintiff has provided numerous vague and conclusory assertions that Alsco knew the unspecified statements were false and that Alsco negligently failed to investigate the allegations made in the complaint, *see, e.g.* Compl. at ¶¶ 70–72, 82–85, the Complaint does not contain any factual support beyond Plaintiff's own bald and conclusory assertions. A complaint "must indicate more 'than extravagant and diffuse conclusions of the pleader.'" *Metromedia*, 285 Md. at 172 (quoting *Garonzik v. Balto. Fed. S. & L. Ass'n*, 225 Md. 322, 323, 170 A.2d 219 (1961)). Plaintiff has failed to meet that burden and has not pled any facts to support the falsity of any statement.

Finally, Plaintiff asserts that Alsco conducted its investigation negligently and should not have terminated him. His disagreement with the decision to terminate his employment is insufficient to allege that Alsco made false statements. Additionally, Maryland does not recognize negligent investigation as a cause of action or as grounds for a claim of defamation. *Bagwell v. Peninsula Regional Medical Center*, 106 Md. App. 470, 518–19, 665 A.2d 297 (1995); *Gladhill v. Chevy Chase Bank, F.S.B.*, No. 905 Sept. Term 2000, 2001 WL 894267 at *4 (Md. App. Aug. 1, 2001). Therefore, Plaintiff has failed to plead sufficient facts to establish that any of Alsco's statements were false.

To survive a motion to dismiss, Plaintiff must plead facts sufficient to support all elements of a defamation claim. However, Plaintiff has failed to plead sufficient facts to support that (1) Alsco made any defamatory statements to a third party, and (2) any statements made were false. Because Plaintiff has failed to establish all elements of a claim of defamation, Count I should be dismissed.

## II. COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count II, Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED") based on three alleged actions by Alsco: (1) terminating Plaintiff for "purported professional misconduct"; (2) issuing Plaintiff a termination letter outlining the grounds for his termination; and (3) allegedly "intentionally or recklessly" communicating information related to Plaintiff's misconduct to unidentified Alsco employees and third parties "in the course of its purported investigation." Compl. at ¶91. A plaintiff asserting a claim for intentional infliction of emotional distress must establish that (1) defendant's conduct was "intentional or reckless"; (2) the conduct was "extreme and outrageous"; (3) plaintiff's emotional distress was caused by the defendant's wrongful conduct; and (4) the emotional distress was severe. *Batson v. Shiflett*, 325 Md. 684, 733–34, 602 A.2d 1191 (1992). When evaluating an IIED claim, Maryland courts focus on whether the defendant's alleged conduct was extreme and outrageous. *See Lindenmuth v. McCreer*, 233 Md. App. 343, 369, 165 A.3d 544 (2017) ("[T]he plaintiff carries a particularly difficult burden in this regard. To meet the test of "outrageousness," the conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal citations omitted). Therefore, for the purpose of this Motion to Dismiss, Alsco will focus on the extreme and outrageous element.

In the context of the employer-employee relationship, the Appellate Court of Maryland has stressed that

> [t]he workplace is not always a tranquil world where civility reigns. Personality conflicts and angst over disciplinary actions can be expected. Even a certain amount of arbitrary nastiness may be encountered at all levels in all occupations; this is a fact of life we must accept as readily as we recognize that employers and employees on the job interact differently than do friends at a summer picnic.

10

*Kentucky Fried Chicken Nat. Management Co. v. Weathersby*, 326 Md. App. 663, 679, 607 A.2d 8 (1992). Maryland courts have found conduct to be extreme and outrageous where a psychologist had a sexual relationship with the plaintiff's wife while acting as the couple's marriage counselor, *Figueiredo–Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991); where a doctor did not disclose that he had herpes before having sexual intercourse with a nurse, *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988); and where an insurer's actions against a workers' compensation claimant were solely intended to harass her until she dropped her claim or committed suicide, *Young v. Hartford Accident & Indemnity*, 303 Md. 182, 492 A.2d 1270 (1985). By contrast, Maryland courts have held that an employer who investigates an employee for alleged misconduct, terminates him, and escorts him out of the building has not engaged in extreme and outrageous conduct. *See, e.g., Lauture v. Saint Agnes Hospital*, 429 Fed. App'x 300, 309 (4th Cir. 2011) (applying Maryland law) (affirming summary judgment on plaintiff's IIED claim based on the employer accepting her resignation and immediately having security guards escort her out of the building).

None of Alsco's alleged actions rise to the level of conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Jones*, 281 Md. 560, 567, 380 A.2d 611, 614 (1977). In *Bagwell v. Peninsula Regional Medical Center,* the plaintiff was discharged following an investigation into an allegation that plaintiff struck a patient on the head while attempting to restrain him. 106 Md. App. 470, 482–486, 665 A.2d 297 (1995). The plaintiff asserted that the employer "refused to allow him access to the written statements," gave him a disciplinary notice outlining the reasons for his termination that had been prepared before the termination meeting, and that the meeting was a sham because the employer "was never interested in what [plaintiff] had to say." *Id.* at 485–86. The court, affirming the trial court's judgment for the employer on

11

plaintiff's intentional infliction of emotional distress claim, stated that "[the employer] fired [plaintiff], perhaps somewhat abruptly and harshly, but there is nothing to support appellant's bald assertion of extremity and outrageousness, or otherwise indicating that the discharge sank to a level that is so beyond the pale as to constitute actionable conduct." *Id.* at 517.

The same can be said of Plaintiff's termination by Alsco. Alsco investigated a complaint and terminated Plaintiff at the conclusion of its investigation in a standard and unremarkable manner. Although Plaintiff disagrees with the conclusion of the investigation, he has failed to provide any facts asserting that Alsco took any actions that were "so extreme and outrageous that it went beyond all bounds 'usually tolerated by decent society.'" *Id.* at 515 (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co.*, 326 Md. at 670). Therefore, Count II should be dismissed.

### III. COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE SUFFICIENT FACTS TO PLEAD A CLAIM FOR WRONGFUL TERMINATION

In Count III, Plaintiff asserts a claim for wrongful termination based on the theory that his termination undermines Maryland public policy, specifically a public policy that "expressly and clearly aims to protect those who have been subjected to bona fide sexual harassment." Compl. at ¶¶95–99. A plaintiff asserting a claim for wrongful or abusive termination must plead facts establishing: "(1) that the employee was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire the employee." *Shapiro v. Massengill*, 105 Md. App. 743, 764, 661 A.2d 202 (1995) (citing *Leese v. Baltimore Co.*, 64 Md. App. 442, 468, 497 A.2d 159, *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985)). "The source of the compelling public policy **must be pled with particularity** in the employee's complaint." *Panessa v. Johns Hopkins University Applied Physics Laboratory, LLC*, No. 0726 Sept. Term 2013, 2015 WL 5925893 at *3 (Md. June 10, 2015) (citing *King v. Marriott Int'l, Inc.*, 160 Md. App. 689, 703, 866 A.2d 895 (2005)) (emphasis added). *See also Bagwell v.*

12

*Peninsula Regional Medical Center*, 106 Md. App. 470, 495, 665 A.2d 297 (1995) ("[T]he employee must demonstrate the policy in question with clarity, specificity, and authority.").

Plaintiff fails to plead *any* source for the public policy he asserts his termination violated. Where a plaintiff does not cite to a constitution or statute as a source of authority and instead relies on an otherwise unrecognized public policy as the basis for a wrongful discharge claim, it "involves the application of a very nebulous concept to the facts of the case, a practice which should be employed sparingly, if at all." *Id.* (internal quotations and citations omitted). Plaintiff contends, without any cite to legal authority, that the basis for his claim is a public policy protecting victims of sexual harassment. Plaintiff does not allege that he was a victim of sexual harassment, and it is incredibly ironic that Plaintiff attempts to twist an alleged public policy which protects victims into protecting him as an alleged harasser. Additionally, although courts in Maryland have permitted wrongful termination claims by *victims* of sexual harassment at work, none have found an employer liable for wrongful termination for firing the alleged harasser. *See, e.g., Insignia Residential Corp. v. Ashton*, 359 Md. 560, 755 A.2d 1080 (2000) (affirming a jury verdict for plaintiff's claim of wrongful discharge where she was discharged in retaliation for sexual harassment by refusing to engage in sexual intercourse with a company official).

Finally, Plaintiff was an at-will employee. Alsco "had an absolute right to fire [him] for no reason or for almost any reason without incurring any liability for doing so." *Beery v. Maryland Medical Laboratory, Inc.*, 89 Md. App. 81, 94, 597 A.2d 516 (1991). In *Beery*, the plaintiff brought a claim for wrongful or abusive termination after she was accused of violating company policy that amounted to theft. *Id.* The court held that

> [h]ad she been guilty of the alleged misconduct, it would have been entirely proper and appropriate for the employer to fire her. Firing her on the basis of a fellow employee's unsubstantiated allegations, without proof and, indeed, without fully investigating the matter,

13

> may very well have been improper—even foolish—but can hardly be said to contravene any clear mandate of public policy.

*Id.* at 94–95. Similarly, Plaintiff was terminated for violating company policy. Compl. at ¶58. Plaintiff's disagreement with the allegations against him, the investigation, and the outcome of that investigation do not amount to a violation of public policy. As the *Beery* court reiterated, there is no due process requirement for a private employer to terminate an at-will employee. *Beery*, 89 Md. App. at 95–96.

Therefore, because Plaintiff has failed to plead the source of any public policy his termination allegedly violated as required to maintain a wrongful termination claim, Count III should be dismissed.

## CONCLUSION

Based on the foregoing, this Court should grant Defendant's Motion and dismiss Plaintiff's complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  December 19, 2024                              Respectfully submitted,

*/s/ Suzzanne W. Decker*
Suzzanne W. Decker (Fed. Bar No. 24007)
Tonya R. Foley (Fed. Bar No. 30470)
**Miles & Stockbridge P.C.**
100 Light Street, 7th Floor
Baltimore, Maryland 21202
Tel: (410) 727-6464
Fax: (410) 385-3700
Email: sdecker@milesstockbridge.com
Email: tfoley@milesstockbridge.com

*Attorneys for Defendant*