## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| RYAN BARRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: 8:24-cv-03590-PX |
| | ) |
| ALSCO INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

### PLAINTIFF'S MEMORANDUM IN
### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Ryan Barry ("Plaintiff" or "Mr. Barry"), by and through undersigned counsel, respectfully submits this Memorandum in Opposition of Defendant Alsco, Inc.'s ("Alsco" or "Defendant") Motion to Dismiss (the "Motion"). For the reasons set forth below, Plaintiff requests that the Motion be denied.

### RELEVANT FACTS

This matter comes before the Court upon Plaintiff's Complaint filed on November 19, 2024 (the "Complaint"). The Complaint arises from Defendant's wrongful termination, defamation, and other maltreatment of Plaintiff. Prior to the events at issue in this case, Mr. Barry enjoyed an exceptional personal and professional reputation. Comp. ¶1. He had served with distinction in the Marine Corps and earned multiple awards for his distinguished service. Compl. ¶8. He thereafter began his career in the textile rental services industry where he built his professional reputation first at a company known as Unifirst Corporation and was then, due to his strong and positive reputation, recruited by Defendant, Alsco. Compl. ¶¶9-12. He was steadily and progressively promoted at both companies and never once had a bad performance review or been the subject of disciplinary action. Compl. ¶¶10, 18. That abruptly changed on February 5, 2024 when Alsco, following Mr. Barry's eight years of demonstrably excellent work, terminated Mr. Barry's

1

employment after a cursory and haphazard investigation into an allegation of sexual misconduct under the influence of alcohol, which allegation was unfounded and untrue. Compl. ¶1. Alsco either knew the allegation was untrue or recklessly disregarded whether the allegation was untrue by failing to conduct a meaningful investigation. Compl. ¶¶ 50, 70. Instead, Alsco informed several people that Mr. Barry was being investigated for sexual misconduct under the influence of alcohol and further publicized Alsco's endorsement that the false allegation was true by parading Mr. Barry out in front of his coworkers, subordinates and other third parties on two occasions – one of those times when a police car was positioned outside the Alsco office. Compl. ¶¶37, 41-43, 47-48, 61, 65.

Plaintiff experienced embarrassment and distress as a result of Defendant's improper and extreme actions, which included terminating Plaintiff without just cause or proper investigation, disclosing the nature of the (untrue) allegations and purported behavior to others, and holding him out to public ridicule by escorting him off the premises in front of coworkers, subordinates and others. Plaintiff has sustained significant injury to his reputation, his employment, and to his health as a result of Alsco's wrongful acts.  Compl. ¶65. As set forth below, Plaintiff has properly alleged causes of action for Defamation, Intentional Infliction of Emotional Distress, and Wrongful/Abusive Termination.

Alsco essentially asserts that it should be immune from responsibility for its wrongful acts because, as an employee at will, Mr. Barry's employment could be terminated at any time for any or no reason.  This position, however, underscores the actionable nature of Alsco's wrongful acts. Instead of simply terminating Mr. Barry's employment, Alsco chose to prepare a written document stating Plaintiff purportedly violated sexual harassment and standards of conduct policies without basis and then publicized to others such personally and professionally damaging conclusions.  Mr. Barry's position of an at-will employee does not insulate Alsco from liability.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "provide the grounds of his entitlement to relief," including "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will satisfy facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a complaint is a well-pleaded complaint if it "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [in support of its claims]." *Twombly*, 550 U.S. 544, 556. In cases like the one at issue here, the Federal Rules do not demand that a complaint describe alleged wrongdoing with specific particularity. *Kwang Dong Pharmaceutical Co. v. Han*, 205 F.Supp.2d 489, 493 (D.Md.2002) (citing *Comet Enter. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 860 (4th Cir. 1997)); Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure* § 1356 (1990)).

Upon review of a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must "assume the truth of all well-pleaded facts and allegations in the complaint, as well as all inferences that can reasonably be drawn from them," order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121, 916 A.2d 257, 264 (2007) (internal citations omitted). Moreover, in determining whether a petitioner has alleged claims upon which relief can be granted, "[t]here is ... a big difference between that which is necessary to prove the [commission of a tort] and that which is necessary merely to allege [its commission]," and, when that is the issue, the court's decision does not pass on the merits of the claims; it merely determines the plaintiff's right to bring the action. *Id*. (internal citations omitted).

## ARGUMENT

The Complaint seeks damages against Defendant for (i) defamation (ii) intentional infliction of emotional distress, and (iii) wrongful/abusive termination. As further explained

below, the Defendant's Motion to Dismiss (the "Motion") should be denied because Plaintiff properly stated a claim for all causes of action asserted within the Complaint.

## I.    Plaintiffs' Complaint Sufficiently Pleads Defamation

To present a prima facie case for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff suffered harm. *Hearst Corp. v. Hughes,* 297 Md. 112, 120-25, 466 A.2d 486 (1983); *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976)). A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* (citing *Batson v. Shiflett,* 325 Md. 684, 722-23, 602 A.2d 1191 (1992)).

A "'false tale of another ... which may impair or hurt his trade or livelyhood' [or] a statement 'that adversely affects [an employee's] fitness for the proper conduct of his business ... [is] actionable *per se* at common law.'" *Shapiro v. Massengill,* 105 Md.App. 743, 661 A.2d 202, 218 (1995) (internal citations omitted). "'Fault,' for the purposes of the prima facie case, may be based either on negligence or constitutional malice." *Id*. Under the second element of defamation, a "false" statement is one "that is not substantially correct." *Batson v. Shiflett, 325 Md. 684, 726*, 602 A.2d 1191, 1213 (1992). Establishing the third element, that a defendant is legally at fault, requires a showing that, at a minimum, the party making the false statement acted negligently. *Hearst Corp. v. Hughes*, 297 Md. 112, 466 A.2d 486, 490–92 (1983). For the fourth element, actual harm must generally be established, but in cases in which the statement was defamatory *per se* and was made with actual malice, harm may be presumed. *Id.* at 493.

When the Court assumes, as it must, based on the Complaint, that the Defendant knowingly made false and defamatory statements against the Plaintiff with actual malice, or that the Defendant made these statements negligently, that these statements were published publicly, that these statements were made with the knowledge of the falsity of the statements with the intent to

harm Plaintiff's reputation and integrity, and that Plaintiff was harmed and suffered damages, the Plaintiff has stated a valid claim for defamation.

A.  Defamation of the Type Alleged in the Complaint is Defamation *Per Se*

Maryland follows the common law distinction between defamation *per quod* and defamation *per se*. *Solomon Foundation v. Christian Financial Resources, Inc.*, 2023 WL 3058321, at *3 (D.Md., 2023). Defamation *per quod* requires that the plaintiff allege extrinsic facts in the complaint to establish the defamatory character of the words or conduct. *Id*. Conversely, defamation *per se* is defamation on its face – the words themselves impute defamatory character. *Id*. Statements typically considered to be defamatory *per se* include those disparaging the business reputation of an individual or those relating to serious sexual misconduct. *See* Restatement (Second) of Torts §§ 570 (1977).

The nature of the published statements at issue here are by their very nature defamation *per se*. Defendant, both in writing and verbally, publicly stated that Plaintiff had engaged in sexual harassment. Compl. ¶¶ ¶¶ 33, 37, 50, 57-58, 66. As contained in the Complaint, these accusations also impacted Plaintiff's business reputation. Defendant made these disparaging remarks, at the very least negligently and at the most knowingly, without proof that the published statement was true. *Id*. at ¶¶ 50, 70. Due to the nature of the allegation, and as discussed in more detail below and in the Complaint, Plaintiff has suffered significant harm in the form of mental anguish and other medical issues, and a loss of income and inability to find other work. Plaintiff is therefore not required to plead the extrinsic facts Defendant claims is necessary and Defendant's Motion should be denied on this basis alone. However, even if the Court were to find that the statements by Defendant were not defamation *per se*, Plaintiff has pled its allegation of defamation with the particularity required by the Federal Rules.

B. <u>The Complaint Sufficiently Pleads that Defendant's Statements were Defamatory and Published</u>

Plaintiff has pled all of the necessary elements of a defamation action. Namely, Plaintiff has properly pled: (1) a defamatory communication[1] (that Plaintiff engaged in professional misconduct of a sexual nature); (2) a provable falsity (that Plaintiff did not engage in the alleged misconduct); (3) fault by an actual malice standard, i.e., knowledge of the falsity of the statement or reckless disregard for the truth of the statement (that Defendant was negligent in its failure to ascertain the truth by conducting a thorough, competent, and meaningful investigation); and (4) harm (Plaintiffs' reputational harm and inability to obtain alternate employment at the same level as his employment for Alsco). Further, a defamatory statement can be made by a non-verbal act. *General Motors Corp. v. Piskor*, 277 Md. 165, 171 n. 2, 352 A.2d 810, 814 n. 2 (1976) (where a gesture made by one of defendant's supervisors—waving a finger in front of plaintiff and holding discussion with employee in full view of numerous other employees—was found sufficient to convey to plaintiff's fellow employees a defamatory imputation of theft).

The Complaint sufficiently alleges that Defendant published to its employees and other third parties that "Mr. Barry engaged in professional misconduct, including inappropriate sexual conduct under the influence of alcohol." Compl. ¶ 82. Specifically, the Complaint alleges that:

- Upon information and belief, Alsco, through Ms. Hutter and Mr. Notabartolo, informed various Alsco employees of the allegations against Mr. Barry of purported inappropriate sexual conduct under the influence of alcohol at the Party. Compl. ¶ 37.

- People from other Alsco branches reached out to Mr. Barry and his wife asking questions about Mr. Barry's "out of service" status. Compl. ¶ 47.

- It also became apparent that Alsco conveyed to its employees that a determination had been made that Mr. Barry was guilty of professional misconduct, including inappropriate sexual conduct under the influence of alcohol, by openly and obviously escorting Mr. Barry out

[1](a) defamatory: a statement tending to expose one to public scorn, hatred contempt, or ridicule. (b) publication: a communication to a third person who reasonably recognizes the statement as being defamatory. *See Haskins v. Baylis*, 440 F. Supp. 2d. 455 (D.Md. 2006) (quoting *Samuels v. Tschechtelin*, 135 Md.App. 483 (2000).

of the Alsco office and by instructing other Alsco employees not to communicate with Mr. Barry. Comp. ¶49.

Plaintiff further alleges that Defendant's actions, namely escorting Plaintiff out of the building in full view of all staff twice, indicated to other Alsco employees that Plaintiff was guilty of the alleged misconduct. Compl. ¶¶ 41, 65.

Under Maryland law, a company's intra-company communication constitutes a publication and Maryland courts have routinely recognized intra-company communications as possible vessels for defamation. In fact, Maryland cases involving claims of defamation in the workplace directly referred to statements between employees of a company as publications. *See, e.g., Gen. Motors Corp. v. Piskor*, 277 Md. 165, 352 A.2d 810, 814 n.2 (1976) (stating that the jury was "properly permitted to conclude" that the defendant's employees defamed the plaintiff to his fellow employees and noting that, in part, the company's conduct constituted defamation when employee was forced into a glass-enclosed office where his meeting with management was in full view of two shifts-worth of employees); *Henthorn v. W. Md. Ry. Co.*, 226 Md. 499, 174 A.2d 175, 180 (1961) (describing the "publication" of defamatory statements about the plaintiff during an internal hearing before a trainmaster). Thus, even to the extent that Defendant's defamatory statements were made to other Alsco employees, such communications rise to the level of publication.

Defendant attempts to paint any improper communication to others as part of the "investigation" they conducted and proper under EEOC guidance. Mot. at 8-9. However, news of the allegations, and Plaintiff's subsequent termination, reached far beyond the individuals who may have been contacted as part of the investigation. Moreover, as stated in the Complaint, Plaintiff learned that Defendant had not interviewed many of the attendees of the Party who had interacted with Plaintiff and witnessed his behavior firsthand, and who would have had reason to be made aware of the allegations. Compl. ¶ 53. As such, unless published by Defendant, there is no valid rationale for individuals who were not present at the Party or who do not work at the

relevant Alsco branch to have learned of Plaintiff's purported misconduct. Under the EEOC guidance Defendant cites, once an investigation ends, "the employer should inform the complainant and alleged harasser of its determination and any corrective action that it will be taking." Mot. at 9. This provision did not grant Defendant leeway to share information regarding the accusations against Plaintiff with individuals uninvolved in the investigation and with no connection to the Alsco office or Party.

At this stage, Plaintiff is only required to identify the defamatory statement. Plaintiff has done so. Defendant's assertion that "Plaintiff only alleges that Alsco investigated a complaint relating to his behavior at the Party and, at the conclusion of the investigation, terminated the Plaintiff for violations of Alsco policies" completely disregards the fact that, even assuming the investigation was properly conducted (which Plaintiff does not), the Complaint clearly alleges that defamatory statements regarding Plaintiff's alleged misconduct were published to individuals beyond those involved in the investigation. Mot. at 8. Defendant cannot escape liability by ignoring the facts laid out in the Complaint—which clearly identifies the published defamatory statements that were made to various employees that portrayed Plaintiff negatively and have caused actual damages.

Defendant asserts that the act of Plaintiff being escorted, "without more" does not constitute defamatory publication. Mot. at 5. The case cited by Defendant to support its contention is easily distinguished. Mot. at 8. In *Gay v. William Hill Manor, Inc*., the court found that an employee being escorted to and from her locker was not conduct constituting publication of a defamatory statement in part because the court had not heard any testimony that such conduct was unusual. 536 A.2d 690, 693 (Md. Ct. Spec. App. 1988). However, and contradictory to Defendant's argument, the court went on to cite *Great Atlantic and Pacific Tea Company, Inc. v. Paul*, 256 Md. 643, 261 A.2d 731 (1970). In that case, the court *did* find conduct rising to the level of publication where it accompanied a public statement. *Id*. at 648. Further, the court stated that the use of the word "thief" clearly imports commission of a crime and therefore was slanderous *per se*. *Id*. The

facts of *Great Atlantic* are analogous to those here, particularly with respect to the nature of the published statement. Plaintiff's allegation is not simply that he was escorted out of the building without more—but rather that he was escorted out *twice* in front of other staff, *after* the Defendant had also told various employees of the sexual harassment allegations against Plaintiff. Compl. ¶¶ 41, 65. Moreover, one such instance of Defendant's conduct occurred after a 45-minute wait and required Plaintiff to walk past staff while clearly holding a box of all of his office belongings, indicating that the investigation had found him guilty. *Id.* at ¶65. These occurrences clearly demonstrate that the Complaint sufficiently pleads that Defendant published its defamatory statement and that the Motion should be denied.

        C.  <u>The Complaint Sufficiently Pleads the Falsity of the Published Statements</u>

Defendant alleges that Plaintiff has not adequately pled that Defendant's statements were false. Mot. at 9. Specifically, Defendant claims Plaintiff only provided "vague and conclusory assertions" regarding the "unspecified statements" at issue. *Id.* This assertion is belied by the plain language of the Complaint. As an initial matter, Plaintiff expressly identified the defamatory statements at issue: that Plaintiff engaged in misconduct of a sexual nature at the Party, which led to his termination. *See, e.g.* Compl. ¶¶ 33, 37, 50, 57-58, 66. Plaintiff also clearly stated that these statements were false. *See, e.g.* Compl. ¶¶ 50, 70. A false statement is one that is not substantially correct, and Plaintiff sufficiently alleges that the statements regarding his purported misconduct, which were shared to various employees, were false. *Batson v. Shiflett,* 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992).

Whether a publication is defamatory is a question of law for the court. *Hosmane v. Seley-Radtke*, 227 Md. App. 11, 21, 132 A.3d 348, 354, aff'd, 450 Md. 468, 149 A.3d 573 (2016). Defendant's entire argument to dismiss Plaintiff's Complaint rests on the assertion that Plaintiff's allegations are not sufficiently supported by facts. That is not the standard applied by the Court when assessing

a motion to dismiss. Rather, the Court simply looks to, taking the allegations in the complaint as true, whether a complaint "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [in support of its claims]." *Twombly*, 550 U.S. 544, 556 (2007). Plaintiff's Complaint more than meets this standard and comports with Maryland Rules: Defendant has clear notice of the complaint against it. Discovery will flesh out the pertinent minutiae.[2] Defendant's Motion must therefore be denied.

     D.  <u>Plaintiff Has Sufficiently Pled the Remaining Two Elements of Defamation</u>

     Plaintiff sufficiently plead the third and fourth elements of defamation, fault by an actual malice standard, i.e., knowledge of the falsity of the statement or reckless disregard for the truth of the statement and harm. The Complaint repeatedly alleges that that Defendant was negligent in its failure to ascertain the truth by conducting a thorough, competent, and meaningful investigation. Compl. ¶¶32-38, 40, 51, 53-54, 57, 59, 68, 70. Plaintiff further alleges that he suffered significant reputational harm and is, as a result, unable to obtain alternate employment at the same level as his employment for Alsco. Plaintiff further alleges that the circumstances surrounding his termination have caused significant emotional strain and physical illness, which he is still treating. Compl. ¶¶ 72-75. Plaintiff has met his burden and Defendant's Motion should be denied.

**II.    Plaintiff's Complaint Sufficiently Pleads Intentional Infliction of Emotional Distress**

     A claim of intentional infliction of emotional distress has four elements: (1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional

---

[2] To the extent Defendant believes there are additional facts relevant to this action that would further support or refute Plaintiff's allegations, such facts are contained in Defendant's records – which Defendant refuses to share with Plaintiff and which would properly be exchanged during discovery, *after* the motion to dismiss stage.

distress must be severe. *Burgess v. Balitmore Police Dep't.,* No. CV RDB-15-0834, 2017 WL 4947004, at *22 (D. Md. Oct. 31, 2017). Where reasonable minds may differ as to whether conduct was extreme and outrageous, that is a question for the jury. *Harris v. Jones,* 281 Md. 560, 569, 380 A.2d 611, 615 (Md., 1977). Plaintiff has pled all elements of intentional infliction of emotional distress with such sufficiency that, taking all of the Complaint's allegations as true, this issue cannot be decided on a motion to dismiss and therefore Defendant's Motion must be denied.

Plaintiff alleges that Defendant terminated him, issued him a letter accusing him of sexual misconduct, and communicated to other individuals that he had engaged in professional misconduct, including inappropriate sexual conduct—without a thorough, competent, and meaningful investigation and without giving him an opportunity to meaningfully defend himself. Compl. ¶ 91. Plaintiff asserts that all of these actions were performed intentionally or recklessly by nature of the haphazard investigation that took place before the determination to terminate him was reached. *Id*. at ¶ 85. As a direct result of this conduct, he is experiencing severe emotional distress—specifically manifesting in sleeplessness, anxiety, and physical illness, for which Plaintiff is in ongoing treatment. *Id*. at ¶ 93.

Defendant's argument focuses on the second element of an intentional infliction of emotional distress claim, extreme and outrageous conduct because Defendant takes the position that an investigation into misconduct and subsequent termination does not constitute extreme and outrageous conduct by Defendant. Mot. at 10. In support, Defendant relies on *Bagwell v. Peninsula Regional Medical Center*. 106 Md. App. 470, 482–486, 665 A.2d 297 (1995). However, the facts of that case differ from those here. There, the plaintiff was fired after an investigation into an allegation that plaintiff had struck a patient on the head while attempting to restrain him. *Id.* The plaintiff claimed that he was refused access to the investigation records and that the investigation was a sham because the employer had already made its decision. *Id.* at 485-86.

*Bagwell* differs significantly from this action. Namely, (1) that case was on appeal and not at the motion to dismiss stage, (2) the investigation included multiple eyewitness accounts (not present here), and (3) the employee was provided the opportunity to make his own statement in defense of his alleged actions (not permitted here). Here, Defendant not only made defamatory statements against Plaintiff, but widely published those statements *without investigating their veracity*, denied Plaintiff the right to defend himself, paraded Plaintiff in front of other employees multiple times demonstrating a belief in his guilt, and accused Plaintiff of a charge serious enough to significantly damage the professional reputation Plaintiff has been building for over a decade and prevent him from finding work, as well as his personal reputation as a respectable member of society. That such a decision was taken with very little investigation is, in itself, outrageous. The remaining cases Defendant cites to discredit Plaintiff's intentional distress claim constitute irrelevant and inapplicable circumstances—what makes the present circumstance outrageous is the hasty investigation, the publication of unproven allegations of sexual misconduct, defamation *per se*, and the subsequent effect on Plaintiff's reputation and livelihood. The Complaint sufficiently alleges all elements of intentional infliction of emotional distress and therefore requires that the Motion be denied.

### III.    Plaintiffs' Complaint Sufficiently Pleads Wrongful Termination

Rule 8 of the Federal Rules of Civil Procedure states that each averment of a pleading shall be simple, concise, and direct. In fact, Rule 8(e) provides that all pleadings shall be so construed as to do substantial justice. Fed. R. Civ. P. 8(e). Under Maryland law, an employer may ordinarily discharge an at-will employee for any reason. *See Adler v. Am. Standard. Corp.*, 291 Md. 31, 35, 432 A.2d 464, 467 (1981). However, Maryland recognizes the tort of abusive or wrongful discharge as a "narrow exception" to the general rule in circumstances where an at-will employee's termination contravenes a "clear mandate of public policy." *Id.* at 47, 432 A.2d at 473. To establish

wrongful termination, "the employee must be discharged, the basis for the employee discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 610 (D. Md. 2005).

Defendant argues that Plaintiff's wrongful termination claim is subject to dismissal because Plaintiff fails to plead with particularity the public policy allegedly violated. Mot. at 14. To the contrary, with regard to his wrongful termination claim, Plaintiff's Complaint clearly points to Maryland public policy seeking to protect against unsubstantiated and false allegations of sexual harassment. Compl. ¶¶ 95-99. Plaintiff then spells out how that public policy was violated as a result of his termination, which was based on an allegation of an act of sexual harassment that Plaintiff did not perform. *Id*. at ¶ 100-102. Moreover, the Complaint plainly alleges Defendant's violation of this specific public policy through its failure to conduct any thorough investigation before Plaintiff was terminated. *Id*. at ¶ 103. Under the pleading requirements, Plaintiff has sufficiently pled facts that entitle him to engage in discovery of Defendant's records and witnesses to spell out additional facts for trial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and for other and further relief as this Court deems appropriate.

## REQUEST FOR HEARING

Plaintiff requests a hearing for the presentation of oral argument regarding this motion.

Respectfully submitted,
RYAN BARRY,

By Counsel

Dated: January 10, 2025

/s/ Jason C. Constatine

Jason C. Constantine
Moore & Lee, LLP
1751 Pinnacle Drive, Suite 1100
McLean Virginia 22102
T: (703) 506-2050
F: (703) 506-2051
j.constantine@mooreandlee.com

*Counsel for Plaintiff Ryan Barry*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this January 10, 2025 a true and correct copy of the foregoing Consent Motion for Extension was served, via electronic filing, on Defendant Alsco Inc.'s counsel in this matter through the District Court's electronic filing system.

/s/ Jason C. Constantine
Jason C. Constantine
