IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RYAN BARRY,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:24-cv-3590-PX |
| | * | |
| | * | |
| **ALSCO, INC.,** | * | |
| | * | |
| Defendant. | | |
| | ****** | |

**MEMORANDUM OPINION**

Pending in this employment case is Defendant Alsco Inc. ("Alsco")'s Motion to Dismiss the Complaint. The matter has been fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion is granted.

I.  **Background**

Alsco provides textile rental services throughout the United States and eleven foreign countries. ECF No. 3 ¶ 6. Since 2015, Plaintiff Ryan Barry worked as a General Manager for Alsco, first in Charleston, South Carolina, and next at the Washington, D.C. plant located in Lanham, Maryland. *Id.* ¶¶ 12, 15. Under Barry's leadership, both plants became top producers for the company. Barry thus earned a solid reputation as a "skilled businessman and a highly effective and qualified manager." *Id.* ¶ 19. He never received a negative performance evaluation. *Id.* ¶ 17.

On January 26, 2024, Alsco threw a holiday party at the Hamilton restaurant. ECF No. 3 ¶ 20. Barry organized the event for roughly twenty-eight employees and their spouses and

partners. *Id.* ¶ 21. The party ended around 9:00 p.m., after which time a smaller group continued to socialize in a different part of the restaurant until about 10:00 p.m. *Id.* ¶ 23.

Barry returned to the office for work the morning of February 2, 2024. ECF No. 3 ¶ 25. When he arrived, Barry learned that Alsco's Human Resources Business Partner, Giovanni Notabartolo, and Corporate Human Resources Field Manager, Maggan Hutter, were there to "investigate a complaint." *Id.* ¶¶ 26–27. Neither shared with Barry the details of the complaint or even that Barry was the subject of it, so Barry assumed the matter involved another Alsco employee at the Washington plant. *Id.* ¶¶ 29–31.

Notabartolo asked Barry if anyone had been drinking at the party, or if Barry himself was "impaired" because of alcohol. He also asked if Barry had hugged anyone, caressed a person's head, or professed his love. ECF No. 3 ¶ 33. Barry denied all allegations. *Id.* ¶ 34. Hutter and Notabartolo concluded the meeting by advising that the investigation would remain confidential and directed Barry not to talk about the matter with any employees or conduct his own investigation. *Id.* ¶ 35.

About an hour later, at 10:30 a.m., Hutter and Notabartolo told Barry that he was being put "out of service" for five days pending the investigation. ECF No. 3 ¶ 38. They further advised that the Regional Manager, Bob Jones, would contact Barry once the investigation concluded. *Id.* Notabartolo next escorted Barry out of the office in front of his employees and others present at the plant. *Id.* ¶ 41. They also instructed all employees not to speak with Barry. *Id.* ¶ 44. Later that day, Barry learned that Alsco General Manager, Bob Earl, and Earl's wife, Jeannette, blocked Barry and his wife on Facebook. *Id.* ¶ 46. Other employees also asked Barry and his wife about the reasons for his "out of service" status. ECF No. 3 ¶ 47.

On the afternoon of February 5, 2024, Jones reached out to Barry and the two arranged to meet the following day at 4:00 p.m.  ECF No. 3 ¶¶ 51-52.  In the interim, Barry learned that Alsco had not interviewed many attendees at the party, especially those who had been in Barry's presence that evening and who could confirm that Barry behaved appropriately and was sober.  *Id.* ¶ 53.

The next day when Barry arrived at the office, he saw a marked police cruiser in the office parking lot.  ECF No. 3 ¶ 56.  Notabartolo escorted Barry to a conference room where Jones fired Barry.  *Id.* ¶ 57.  Jones handed Barry a letter which stated that he was fired for "violation of the Alsco Sexual Harassment Policy (see, e.g., Section 1.1.3) and standards of conduct (see, e.g., Section 4.15) set forth in the Employee Handbook, as well as violation of SOP 1700 (Discrimination and Harassment Prevention Complaint Procedures Policy)".  *Id.* ¶ 58.  Barry asked for the details supporting the termination, but Jones refused to share any other information with him.  *Id.* ¶ 58.  Barry was next handed a box of his personal belongings and escorted out of the office.  *Id.* ¶ 60.  Because Barry had to turn in his company car, he was forced to wait 45 minutes for his wife to pick him up.  *Id.* ¶¶ 62–63.  After Barry's termination, Alsco promoted Tony Tamanini to Barry's position.  *Id.* ¶ 76.  Tamanini had been present at the party.  *Id.* ¶ 77.

On November 19, 2024, Barry filed suit in Prince George's County Circuit Court against Alsco for common law claims of defamation (Count I), intentional infliction of emotional distress ("IIED") (Count II), and wrongful termination in violation of public policy (Count III).  Alsco timely removed the matter to this Court and next moved to dismiss the claims for legal insufficiency.  ECF Nos. 1 & 6.

## II. Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint includes facts sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A plaintiff must plead facts to support each element of the claim to satisfy the standard. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). In so assessing the sufficiency of the Complaint, the Court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the plaintiff's favor. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court does not credit conclusory statements or legal conclusions, even when couched as allegations of fact. *See Iqbal*, 556 U.S. at 678–79; *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

## III. Analysis

### A. Defamation (Count I)

Alsco first argues that the defamation claim must be dismissed because Barry failed to plead the alleged defamatory statements with the requisite specificity. ECF No. 6-1 at 6. For the defamation claim to survive challenge, the Complaint must make plausible that the defendant "(1) made a defamatory statement to a third person, (2) the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007) (citing *Smith v. Danielczyk*, 400 Md. 98, 115 (2007)). Although defamation is not subject to the formal heightened pleading requirements of Federal Rule of Civil Procedure 9(b), the claim must nonetheless be supported by specific facts to make plausible all four elements. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). *See also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) ("To satisfy federal pleading

4

standards, a plaintiff must specifically allege each defamatory statement."); *Brown v. Ferguson Enters., Inc.*, No. CCB-12-1817, 2012 WL 6185310 at *3 (D. Md. Dec. 12, 2012). Indeed, "each act of defamation is a separate tort that in most instances a plaintiff must specifically allege." *Eng. Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision).

The Court agrees with Alsco that the Complaint fails to plead alleged defamatory statements with sufficient specificity. The Complaint, at best, merely avers that Hutter and Notabartolo told employees about Barry's "sexual misconduct," but otherwise does not include any specifics about what was said, when it was said, and to whom. ECF No. 3 ¶¶ 49, 66 & 71. Mere references to "sexual misconduct" or "sexual assault" do not alone amount to a "statement" actionable in defamation. *See Doe*, 123 F. Supp. 3d at 757 (generalized allegation of having been the "victim of sexual assault" during a college party insufficient). Without more, the allegations are too generalized to make the claim plausible. *Cf. Solomon Found. v. Christian Fin. Res., Inc.*, No. 1:22-cv-00993-JRR, 2023 WL 3058321, at *4-5 (D. Md. Apr. 24, 2023) (specific false statements articulated sufficient to make plausible the claim).[1]

Barry, in response, asserts that because allegations of sexual misconduct in the workplace are defamatory *per se*, the claim must proceed. Barry is correct that where "the words themselves impute the defamatory character" Maryland considers that to be defamation *per se*. *Id.* at *3 (quoting *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365-66 (D. Md. 2017)). Under those circumstances, where the statement's "injurious character is a self-evident fact of common knowledge," the court may take judicial notice of that fact, and no additional evidence of the statement's defamatory character need be produced. *Shapiro v. Massengill*, 105

---

[1] While the termination letter arguably includes more detail, it was not published to a third party. It was shared only with Barry. Thus, to the extent Barry sought to pursue his defamation claim based on the letter, the claim fails.

5

Md. App. 743, 772 (1995) (quoting *Metromedia, Inc. v. Hillman*, 285 Md. 161, 163-64 (1979)). But critically, the statements must first be averred with sufficient specificity so that the Court may assess whether they are defamatory per se. Generalized descriptors of statements that concerned alleged "sexual misconduct" are simply too nonspecific to advance this analysis.

Barry next argues that because alleged statements of "inappropriate sexual conduct under the influence of alcohol," when combined with Alsco's conduct of publicly escorting Barry off the property and a coworker "unfriending" him, makes the defamatory nature of the statements clear. ECF No. 9 at 6. The Court cannot draw such an inference. Most favorably to Barry, Alsco's having paraded Barry in front of coworkers and a squad car certainly signaled that he was being terminated for some wrongdoing. But those walks do not reveal the nature of the alleged wrongdoing, so they add no context to the alleged defamatory statements. *Cf. Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 653 (1970) (holding jury could find publication of defamatory statements based on contemporaneous combination of false accusation of thievery alongside accosting plaintiff and frisking him). This is especially so when considering that Notabartolo demanded confidentiality during the investigation. Likewise, the "unfriending" speaks to a coworker's efforts to distance himself from Barry, but does not add detail or make any more definite the alleged defamatory statements. Thus, as pleaded the defamation claim fails and must be dismissed.[2]

---

[2] Alsco alternatively argues that the defamation claim fails because no facts demonstrate the accusations were false. ECF No. 6-1. The Court disagrees. When viewing the Complaint's facts as true and most favorably to Barry, he had not been intoxicated nor did he touch anyone at the party inappropriately. ECF No. 3 ¶ 34. *See also id.* ¶¶ 50 & 70 (averring the allegations are "untrue"). Rather, he remained with his wife and other employees throughout the event. *Id.* ¶ 22.

### B. Intentional Infliction of Emotional Distress (Count II)

Alsco next contends that the common law tort of intentional infliction of emotional distress (IIED) fails as a matter of law. IIED claims are reserved for only the most shocking circumstances where a defendant's extraordinary acts cause the plaintiff severe emotional distress. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001). The claim survives challenge "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Savage v. Mayor & City Council of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (citation omitted). *See also Doe*, 123 F. Supp. 3d at 761. This standard sets a high bar. S*ee B.N.S. by Stuart v. Brito*, No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018). Accordingly, Maryland courts routinely reject IIED claims for tortious acts falling short of truly outrageous misconduct that causes intolerable emotional distress. *Karn v. PTS of Am., LLC*, No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017).

When viewed most favorably to Barry, Alsco's alleged wrongful conduct was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Jones*, 281 Md. 560, 567 (1977). Most favorably to Barry, Alsco's management jumped to the wrongheaded conclusion that Barry had inappropriately hugged and caressed a fellow employee at a party, and then they marched Barry off premises in a manner suggesting he had been fired under highly suspicious circumstances. Although callous and ham-fisted to be sure, Barry had not been subject to conduct so outrageous that "no reasonable man" would be expected to endure the emotional pain to follow. The claim, therefore, fails as a matter of law.

### C. Wrongful Termination (Count III)

Alsco lastly contends that the wrongful termination claim fails because Barry has not pleaded sufficient facts to make plausible that his termination amounted to a clear violation of public policy. In Maryland, an at-will employee may be terminated for any reason except when the discharge "contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981); *see also Porterfield v. Mascari II, Inc.*, 374 Md. 402, 422–23 (2003). A claim of "wrongful discharge" is a "narrow exception to this well-established principle." *Sears, Roebuck & Co. v. Wholey*, 139 Md. App. 642, 649 (2001). To make the claim plausible, a plaintiff must aver some facts that show he was discharged, the grounds for discharge violated a clear mandate of public policy, and that a causal connection exists between the two. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451 (2017).

When making the claim, the plaintiff must articulate as the clear mandate of public policy one that is "preexisting, unambiguous, and particularized," and as pronounced "by constitution, enactment, or prior judicial decision, directing [*sic*] prohibiting, or protecting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation." *Elliott v. Md. Corr. Training Ctr.*, No. CCB-20-2963, 2022 WL 814294, at *4 (D. Md. Mar. 17, 2022) (quoting *Sears*, 139 Md. App. at 661). Accordingly, a clear articulation of such policy will usually, but not exclusively, be found in "legislative enactments, prior judicial decisions or administrative regulations." *Adler*, 291 Md. at 45. Apart from those sources, the court should view any other vaguely alleged public policy with the "utmost circumspection," recognizing that "the public policy of one generation may not, under changed conditions, be the public policy of another." *Id.* at 46 (quoting *Patton v. United States*, 281 U.S. 276, 306 (1930) (overruled on other grounds by *Williams v. Florida*, 399 U.S. 78, 92 (1970))).

8

Barry avers that his wrongful termination, grounded in false accusations of sexual misconduct, contravenes the clear public policy of protecting victims from workplace sexual harassment. ECF No. 3 ¶¶ 95, 97. According to the Complaint, "the effectiveness" of Maryland's policy aimed at protecting victims of sexual harassment is "undermined – and contravened – where accusations of sexual harassment are levied without a proper investigation." *Id.* ¶ 98. The claim, as framed, fails.

The Complaint provides no statutory, regulatory or judicial source for this supposed articulation of public policy. Nor does it explain how the termination of one accused of sexual misconduct, even if wrongful, *undermines* the policy of protecting the victims. Indeed, it could just as easily be said that a corporation's willingness to swiftly terminate anyone suspected of sexual misconduct, even if ultimately unfounded, *advances* Maryland's interest in protecting victims because it conveys a zero-tolerance policy of any arguably predatory conduct. Accordingly, the Complaint does not articulate a sufficiently clear mandate of public policy that had been violated when Alsco fired Barry. The claim must be dismissed.

**IV.    Conclusion**

Based on the foregoing, the Court grants Alsco's motion to dismiss. Because Barry has not previously sought leave to amend the Complaint, the Court will grant Barry fourteen days from the date of this decision and Order to seek leave to amend the Complaint to cure the pleading deficiencies, if possible. Should Barry fail to seek such leave, the Complaint will be dismissed with prejudice and without further warning.

A separate Order follows.

| | |
|---|---|
| 6/25/2025 | /S/ |
| Date | Paula Xinis <br> United States District Judge |

9